# UNITED STATES BANKRUPTCY COURT
## FOR THE
### DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**LILLIAN M. O'NEAL,**                                    Chapter 7
     Debtor                                    Case No. 10- 22931-JNF

~~~~~~~~~~~~~~~~~~~~~~~~

**J. DOUGLAS LIBASSI,**
     Plaintiff
v.                                                    Adv. P. No. 11-1297
**LILLIAN M. O'NEAL,**
     Defendant

~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Debtor's Motion to Dismiss the Amended

Complaint filed by J. Douglas LiBassi ("LiBassi" or the "Plaintiff"). The Court heard the

Motion on April 11, 2013. At the hearing, both parties made offers of proof pertinent to the

filing and allowance of a motion to further amend the Plaintiff's Amended Complaint. The

dispositive issue is whether the Amended Complaint must be dismissed because LiBassi

failed to state plausible claims for relief that satisfy the standard set forth in Ashcroft v.

Iqbal, 556 U.S. 662 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), or whether,

1

in light of the  information set forth in LiBassi's Opposition to the Motion to Dismiss and

the offers of proof, including LiBassi's allegation that the Debtor undervalued an  interest

in a cooperative housing unit, LiBassi should be afforded an opportunity to amend his

Complaint for a second time.

For the reasons set forth below, the Court shall enter an order granting the Debtor's

Motion to Dismiss LiBassi's Amended Complaint.

## II. BACKGROUND

The Debtor filed a Chapter 13 petition on November 30, 2010.  She had previously

filed a Chapter 13 petition (Case No. 07-13554) on June 6, 2007.  She moved to voluntarily

dismiss that case on May 12, 2008.[1]

The Debtor filed Schedules of Assets and Liabilities with her most recent petition.

On Schedule B-Personal Property, the Debtor listed, among other assets, 1) funds held in

escrow in the IOLTA account of Attorney Naomi L. Shelton, Esq. in the amount of

$19,655.49, representing funds borrowed from her Thrift Savings Plan ("TSP") account

pursuant to an order of Justice Jeremy Stahlin of the Suffolk County Probate & Family

Court; 2) a TSP account valued at $85,673.14; and 3) "One (1) share  Stonybrook Gardens

Co-operative Corporation (1993) [sic].  No par value and non-transferrable."  On Schedule

---

[1] The Court may take judicial notice of its docket. *See* <u>In re Mailman Steam
Carpet Cleaning Corp.</u>, 196 F.3d 1, 8 (1st Cir.1999) ("The bankruptcy court
appropriately took judicial notice of its own docket.").

C - Property Claimed as Exempt, the Debtor claimed an exemption in the sum of $11,818.04 with respect to funds held by her attorney, Naomi Shelton, Esq., as well as 100% of her TSP account.  The Debtor did not claim the share in the  Stony Brook Gardens Cooperative Corporation as exempt.   On Schedule G-Executory Contracts and Unexpired Leases, the Debtor listed a lease with "Stony Brook Gardens" for a four bedroom apartment located at 72 Chestnut Avenue, Boston, Massachusetts.  She indicated that the lease term was for a one-year period from November 1, 2010 through October 30, 2011 and that the monthly rent was $1,156.  She listed her monthly rent in that amount on Schedule J-Current Expenses of Individual Debtor(s).

On July 12, 2011, the Debtor amended Schedules I and J.  On  Schedule I-Current Income of Individual Debtor(s), the Debtor disclosed that she retired from the United States Postal Service on December 1, 2010, one day after she commenced her Chapter 13 case.  She stated:  "The debtor retired from the U.S. Post Office as of December 1, 2010 and received her last paycheck on December 7, 2010. She now has received notification and documentary proof of her actual monthly federal retirement payment and monthly TSP distribution." The Debtor listed her monthly income on amended Schedule I in the amount of $2,967.56, comprised of Social Security Income ($1,363.60), pensions and retirement income ($1,318.12), and income from her TSP account ($285.84).   On Schedule J, she listed her current monthly rent in the amount of $897.  On the same day she filed amended Schedules I and J, the Debtor moved to convert her Chapter 13 case to a case under Chapter 7.  The Court granted the motion the next day.  The U.S. trustee appointed Lynne F. Riley, Esq. as

the Chapter 7 Trustee.

On July 22, 2011, the Debtor filed "Chapter 7 Individual Debtor's Statement of Intention" in which she indicated her intention to assume the lease for her apartment pursuant to 11 U.S.C. § 365(p).

LiBassi objected to the Debtor's claimed exemptions.  On December 16, 2011, this Court issued a Memorandum and Order overruling LiBassi's Objection to the Debtor's claimed exemptions in her TSP Account, as well as in the "[f]unds held in escrow in the IOLTA account of Naomi L. Shelton, Esq.," as superfluous finding that those funds were not property of the Debtor's bankruptcy estate. *See* In re O'Neal, 462 B.R. 324 (Bankr. D. Mass. 2011).  As part of its December 16, 2011 order, the Court ordered counsel to the Debtor, William E. Scannell, Esq., who had obtained monies held by Attorney Shelton, and the Chapter 7 Trustee to turn over the funds in their possession to the First Justice of the Probate Court within 14 days.

According to the Debtor, as of October 27, 2011, the current amount in the Rockland Trust Company account entitled "William E. Scannell, Esq., Escrow Agent for Lillian O'Neal," including all interest, was $11,793.92.  Attorney Scannell was suspended from the practice of law by the Massachusetts Board of Bar Overseers, effective July 26, 2012.  On July 27, 2012, the Chapter 7 Trustee filed a Report of No Distribution.

Prior to this Court's ruling on LiBassi's Objection to Claimed Exemptions, the Plaintiff filed a three-count Complaint against the Debtor on October 11, 2011.   In his Complaint, LiBassi set forth some of the background of an action brought by the Debtor

4

against her brother, Edward Morgan ("Morgan") in the Suffolk Probate and Family Court,

Department of the Trial Court, in which the Debtor sought the rescission of an agreement

for the transfer of real estate from the Debtor's parents to Morgan. Morgan counterclaimed

against the Debtor. After trial, the Debtor's claims were dismissed and judgment entered

in favor of Morgan on his counterclaim. The complete background of the litigation is set

forth in decisions issued by this Court. *See* In re O'Neal, 462 B.R. 324 (Bankr. D. Mass.

2011); In re O'Neal, No. 10-22931-JNF, 2011 WL 2117017 (Bankr. D. Mass. May 23, 2011);

and In re O'Neal, 07-13554-JNF, 2007 WL 4224326 (Bankr. D. Mass Nov. 27, 2007).[2]

---

[2]Notably, in this Court's May 23, 2011 decision, the Court stated:

In the Debtor's 2007 bankruptcy, LiBassi filed a Motion for Relief from
Automatic Stay imposed by 11 U.S.C. § 362(a), seeking to continue a
contempt proceeding against the Debtor pending in the Probate Court.
The Debtor opposed the Motion. On November 27, 2007, this Court issued
a Memorandum and Order denying LiBassi's Motion for Relief from
Automatic Stay. *See* In re O'Neal, No. 07–13554–JNF, 2007 WL 4224326
(Bankr. D. Mass. Nov.27, 2007). In its decision, the Court recounted the
convoluted proceedings in the Probate Court, proceedings rendered more
complex by LiBassi's disbarment from the practice of law. In its November
12, 2007 decision, this Court stated:

For purposes of the Debtor's Chapter 13 bankruptcy case,
the Probate Court granted judgment [on June 8, 1999] to
Edward [Morgan], as plaintiff-in-counterclaim, against the
Debtor in the sum of $32,630 for "lost rent and rent
needlessly incurred by the plaintiff-in-counterclaim."
Additionally, it enjoined the Debtor "from withdrawing,
transferring, encumbering or otherwise depleting the assets
contained in her Thrift Savings Plan established through the
United States Postal Service, until such time as all sums
owed to the plaintiff-in-counterclaim under this judgment
have been paid in full." Id. at 4 [ O'Neal v. Morgan, No. 99E
0035, Slip Op. at 4 (July 31 2007) ].

The Probate Court, as a further component of its judgment,
provided a mechanism for determination and payment of
attorney's fees incurred by Edward who was represented by
LiBassi. The Probate Court authorized LiBassi to submit an
"itemized affidavit" of his time on or before February 4, 2002
and scheduled a hearing for February 12, 2002 in the event
he failed to do so.

LiBassi was temporarily suspended from the practice of law
on February 27, 2002, approximately one month after the
Probate Court issued its judgment. The Debtor opposed the
award of attorney's fees to LiBassi because he had been
charged with using funds, which were to be held for the
parties in escrow, for his own purpose. In a May 13, 2002
Memorandum of Decision, the Probate Court rejected the
Debtor's position, stating "'[i]f it should turn out that Mr.
LiBassi did what is alleged, that would not be a reason for
[Lillian] to be excused from paying [Edward's] reasonable
fees and costs. The funds paid by [Lillian] for [Edward]'s
reasonable fees and costs will be available to reimburse the
escrowed funds if necessary.'" Id. at 4. The Probate Court
ordered the Debtor to pay Edward the sum of $37,676.25 for
attorney's fees plus $1,504.66 for costs. It directed that
payments be first applied to the $15,000 trust fund
established pursuant to the January 22, 2002 judgment and
then to the separate bank account to bring both repositories
up where they would have been if the accounts had been
diminished only by authorized disbursements. The Probate
Court directed that any additional payments made by the
Debtor were to be applied to the money judgment in favor of
Edward in the sum of $32,630 with the balance, if any, to be
held by Edward's new attorney, James E. Small, "pending
completion of proceedings now pending regarding J.
Douglas LiBassi and the further order of the court." Id. at 5.
The Probate Court ordered the Debtor to make payments on
or before June 7, 2002.

Over five years later, the Probate Court, in its July 31, 2007
decision, observed that LiBassi was disbarred by a judgment
of the Supreme Judicial Court on July 12, 2006 "in part

6

According to LiBassi, the Debtor was ordered to pay $37,676.25 in Morgan's attorney's fees and $1,504.66 in costs.  On June 22, 2006, Morgan assigned his right, title and interest in the award of attorney's fees to LiBassi.  LiBassi alleged that payments made by the Debtor to her TSP account during her 2007 bankruptcy case "constitute a fraudulent attempt to conceal and/or divert assets to a federally protected account."

In his Complaint, LiBassi also referenced the contempt proceeding in which the Debtor was found guilty of contempt, as well as the outcome of a November 17, 2010 hearing in the Probate Court at which the Debtor and her attorney were ordered to immediately deposit loan proceeds from the Debtor's TSP account with the Probate Court.

---

because he used funds of the parties he was holding in escrow in this case for his own purposes." It also observed that the Debtor had paid nothing toward the judgment or attorney's fees. Id.

2007 WL at 4224326 at *2.

In re O'Neal, 2011 WL 2117017 at *1-3.  According to the Debtor in her Motion to Set Aside Default Judgment,

On September 1, 2009, the Probate Court entered a further order on the Complaint for Contempt. The Court ordered that, instead of paying LiBassi to discharge the contempt, Debtor could pay $60,000 to the Probate Court to hold in an interest bearing account; borrow the maximum amount from her TSP Account and pay that to the Court; or file an acceptable bond. The Probate Court enjoined Debtor from withdrawing any sums from her TSP Account.

Having determined that "Ms. O'Neal has the ability to pay at least the maximum amount she can borrow from her thrift savings plan…," the Probate Court, on May 4, 2010, ordered Debtor to submit a TSP loan application in the amount of $50,000.00 before May 18, 2010.

7

According to LiBassi, the funds were first held in escrow in the IOLTA account of Attorney

Naomi L. Shelton, the Debtor's Probate Court attorney, who subsequently transferred them

to the Debtor's bankruptcy attorney, William Scannell, Esq., who put them in escrow at

Rockland Trust.  As noted above, as part of its December 16, 2011 order, the Court ordered

Attorney Scannell and the Chapter 7 Trustee to turn over the funds in their possession to

the First Justice of the Probate Court within 14 days.  LiBassi alleged that the Debtor used

the funds to make payments to the Chapter 13 Trustee.

Based upon these allegations, LiBassi formulated three counts in his original

Complaint.  Pursuant to  Count I, captioned, "Fraud," LiBassi sought to except his

attorney's fees from discharge under "U.S.C. § 523" [sic] because the debt arose out of the

fraudulent actions of the Debtor as a fiduciary.  Pursuant to Count II, captioned "Violations

of Bankruptcy Code," LiBassi alleged the "debtor is in violation of "U.S.C. § 727" [sic].

Finally, pursuant to Count III, captioned "Collateral Estoppel," Libassi asserted that the

"[t]he debtor should be disallowed from discharging her debt to the plaintiff on the

grounds of res judicata and collateral estoppel." [sic].

The Debtor, who was unrepresented by counsel, failed to answer LiBassi's

Complaint, and the Court entered a default on April 9, 2012, and granted a default

judgment on April 18, 2012.  The adversary proceeding was closed shortly thereafter on

May 3, 2012.

In mid-December, 2012, the Debtor, through her successor counsel, filed a Motion

to Reopen the Adversary Proceeding and a Motion to Set Aside Default Judgment.  The

8

Court granted the Motion to Reopen on December 18, 2012, and, on January 22, 2013, the

Court granted the Motion to Set Aside Default Judgment.  In conjunction with its order, the

Court directed LiBassi to file an amended Complaint by February 5, 2013.  The Court

stated:

> . . . I find your complaint is deficient in a number of respects. You do not
> state what subsection of Section 523 or 727 that you believe serve as grounds
> for your exception to discharge and objection to discharge and your
> complaint needs to be amended. It does not state a proper claim for relief. So
> for those reasons, the motion [the Motion to Set Aside]  is granted and I
> order you to amend your complaint within 14 days.[3]

## III. THE AMENDED COMPLAINT

On February 5, 2013, LiBassi filed an Amended Complaint.  Citing "15 U.S.C 1692k,"

pertaining to abusive debt collection practices, as the basis for jurisdiction, as well as 28

U.S.C. §§ 157 and 1334, he identified the Debtor as the defendant, adding "[t]he debt

claimed by the creditor arose out of the fraudulent acts of the debtor as a fiduciary."

LiBassi again recounted some of the chronology of events in the Probate Court.

Referencing the Probate Court's determination to hold her in contempt and its sentence of

incarceration, which it stayed conditioned upon posting an appellate bond, LiBassi alleged

that the Debtor filed her present case "to escape state court litigation and/or sentencing;"

that the Debtor filed her petition in bad faith; that the Debtor failed to produce documents

in response to an examination authorized pursuant to Fed. R. Bankr. P. 2004; that the

---

[3] At the January 22, 2013 hearing, counsel to the Debtor addressed various
subsections of § 523, as well as § 727, arguing that the Debtor had meritorious defenses
to any claims the Plaintiff was attempting to assert through his original Complaint.

Debtor filed her petition in violation of the Bankruptcy Code, that the Debtor failed to list her prior bankruptcy case on the petition;[4] that the "Debtor's expenses exceed the national standard and raise a presumption of abuse,"[5] and that the Debtor failed to list all her assets and "submitted a fraudulent Petition to the Court."

Based upon the foregoing, LiBassi set forth two counts, one under "U.S.C. 523"[sic] for "fraudulent actions of the Debtor as a fiduciary,"[6] and the other under 11 U.S.C. § 727 [sic] because "the Debtor . . . intentionally misrepresented her true financial situation" and "failed to disclose her interest in property and failed to list all her assets."[7]  He did not reference any particular subsections of either § 523 or § 727, although at the January 22, 2013 hearing the Court observed that LiBassi failed to do so.

## IV. THE MOTION TO DISMISS; LIBASSI'S OPPOSITION AND OFFERS OF PROOF

The Debtor moved to dismiss the amended Complaint for failure to state a claim upon which relief can be granted, citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007), and <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 268 (1st Cir. 2009) ("only a complaint that states a plausible claim for relief survives a motion to dismiss." . . .  [T]he court's

---

[4] The Debtor amended her petition to include the prior filing on February 15, 2011.

[5] LiBassi did not move to dismiss the Debtor's Chapter 7 case pursuant to 11 U.S.C. § 707 (b).

[6] LiBassi did not allege to whom the Debtor owed a fiduciary duty, merely noting that in filing the action in the Probate Court she acted "'for the benefit of' her parents and "sought to have the real estate transferred to her as fiduciary for her parents."

[7] LiBassi did not identify specific assets the Debtor failed to disclose.

assessment of the pleadings is 'context-specific,' requiring 'the reviewing court to draw on its judicial experience and common sense.' . . . '[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'").  Specifically, she argued that LiBassi failed to state a claim under 11 U.S.C. § 523(a)(4), which provides an exception from discharge of debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," because the Debtor owed no fiduciary duty to LiBassi. Accordingly, she maintained that the fee award is dischargeable.

With respect to LiBassi's § 727 count, the Debtor recognized that accepting the allegations as true, LiBassi appeared to plead concealment of property pursuant to section 727(a)(2) as grounds for denial of discharge. Citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009), she argued that LiBassi's conclusory allegations of concealment cannot serve as the basis for a claim under § 727 because he failed to provide sufficient facts in support of that claim. She noted that her failure to list her prior bankruptcy was "hardly a secret to LiBassi," warranting denial of her discharge.  Moreover, as noted above, the Debtor amended her petition to correct the omission.  Finally, the Debtor noted that this Court determined that the TSP funds are not property of the bankruptcy estate, *see* <u>In re O'Neal</u>, 462 B.R. 324, 331 (Bankr. D. Mass. 2011), so that the determination of LiBassi's right, if any, to the funds currently held under the aegis of the Probate Court will have no effect on the administration of this Debtor's estate.

LiBassi filed an Opposition and a Supplemental Opposition to the Motion to

11

Dismiss, belatedly citing 11 U.S.C. § 727(a)(3) and (a)(4), as well as § 523(a)(4).  He asserted that the Debtor omitted her stock interest in her four bedroom cooperative apartment located at 72 Chestnut Avenue, Boston, Massachusetts, although he recognized that the Debtor listed the stock ownership interest on Schedule B-Personal Property with a value of $-0-.  Attaching a copy of a portion of the  Articles of Organization for the Stony Brook Gardens Cooperative Corporation to his Opposition, which Articles were not certified, and, therefore, may have been amended, LiBassi referenced Article 5.5, which provide the following:

> Transfer value. The transfer value of stock of the corporation is restricted to an amount calculated as follows:
>
>> (1) The consideration paid for the stock by the first stockholder occupying a unit, as shown on the books of the corporation; plus
>>
>> (2) An increment on the value in subsection (1) equal to the increase in the U.S. "Consumer Price Index, Urban Wage Earners, Boston Standard Metropolitan Statistical Area" in any calendar year, but not less than four percent or more than ten per cent accrued annually as of each December 31; plus
>>
>> (3) The value, as determined by the directors, of any "capital improvements" installed in a dwelling at the expense of the member with the prior approval of the board of directors and which is in good working order at the time of the transfer, under a valuation formula that does not exceed the fair market value of the basic improvement (that is, the reasonable replacement cost of the improvement), accruing up to a maximum amount of $250 per year or $1,000 in the aggregate, whichever is less.

LiBassi, however, omitted a reference to Article 5.1 which provides:

> Transfer restricted.   Except as provided herein, shares of stock in the

12

corporation shall not be transferable. Shares of stock may be transferred only
to persons (including share lenders) and only upon the terms as may be
approved by the corporation in accordance with the standards of eligibility
and limitation set out from time to time in the by-laws.

Based upon the foregoing, LiBassi asserted that his amended Complaint stated a cause of

action for denial of the Debtor's discharge under § 727(a)(4)(A) and that he should be

afforded an opportunity to further amend his Complaint.

In addition, LiBassi asserted that he had stated a claim under § 523(a)(4) because the

debtor was acting in a fiduciary capacity.  He argued that the Debtor was acting as a

fiduciary for her parents and for a trust that was established with Morgan as the

beneficiary.  LiBassi admitted, however, that the trust was a constructive trust and not a

technical or express trust.

In addition, at the hearing, both parties, without objection, referenced various

documents pertaining to the "Stony Brook Gardens Cooperative Corporation."  With

respect to the Debtor's stock interest in the Stony Brook Cooperative Corporation, the

Debtor submitted a continuation sheet for the Article of Organization with different

provisions than the continuation sheet submitted by LiBassi, which he attached to his

Opposition by LiBassi.   In the Debtor's version, Article 5.5 provides:

Transfer value.  The transfer for value of stock of the corporation is restricted
to an amount calculated as follows:

(1) The transfer value from initial occupancy of the
corporation's housing through December of the first calendar
year of occupancy of the Corporation's housing shall be the
consideration paid for the share(s) of stock by the first
stockholder occupying a unit, as shown on the books and the
corporation.

13

(2) The transfer value of the share(s) of stock of the corporation shall be adjusted as of December of each year starting with the first calendar year of occupancy of the corporation's housing by multiplying the transfer value adjusted through the prior December (or, in the case of the first year of occupancy, the consideration paid for the stock by the first stockholder occupying the unit) by the lesser of (a) 1.1 or (b) the quotient of the value of the Index (defined below) as published in December of the then-current year divided by the value of the Index as published in December of the prior year. Such transfer value shall apply to any transfer completed during the following calendar year. The "Index" shall be the U.S. "Consumer Price Index, Urban Wage Earners, Boston Standard Metropolitan Statistical Area" published by the Bureau of Labor Statistics of the United States Department of Labor. If the Index ceases to be published, the Board of Directors shall select a comparable successor or substitute Index.

So long as the Corporation is a general partner in a limited partnership utilizing the federal Low Income Housing Tax Credit (the "Tax Credit") with respect to the transfer value of a share of stock of the corporation shall never exceed an amount equal to one month's rent at the maximum rent level permitted for rent restricted units (equivalent in number of bedrooms to the unit to which the stock relates) under Section 42(g)(2) of the Internal Revenue Code or any successor provision applicable to the Tax Credit Units. It is intended that the cost of acquiring the share(s) of stock, when taken into account in connection with the level of carrying charges, will meet the requirements for Tax Credit Units, so that the units remain eligible for the Tax Credit. If at any time it appears, due to increases in the transfer value of the shares, the unavailability of share financing, or other factor, that payment of the share price would cause a Tax Credit Unit to no longer be eligible for the Tax Credit, the maximum transfer value of such shares shall immediately and automatically be reduced to the amount which would be consistent with retaining eligibility of such unit for the Tax Credit and any consideration in excess of such amount paid by then-current stockholders shall immediately be refunded to the corporation.

The Debtor, following the hearing, also submitted, along with other documents requested by LiBassi, a copy of an Occupancy Agreement which she executed on February 11, 1993. That Agreement set forth that the Debtor's initial basic rent was $619. Section 22

14

of the Agreement, captioned "Security Deposit," provided:

> Simultaneously with the execution of this Agreement, the Resident has purchased one or more shares of the Cooperative's stock for a total purchase price of $750.  The Cooperative has agreed with the Owner that, in lieu of the posting by Resident of a security deposit, the Owner shall have the right, subject to the limitations herein, to the proceeds from the sale of the Resident's share(s) of the Cooperative's stock (the "Sales Proceeds") upon the termination of the Resident's occupancy in the Development.  Resident understands that the purchase price for such shares(s) is not to be considered prepaid rent and that the Owner's damages for any breach of this Agreement shall not be limited to the amount of the Sales Proceeds.  Owner acknowledges that it shall, upon the later to occur of (x) the lapse of thirty (30) days after termination of this Agreement or (y) the Resident's vacating the Development completely together with all of the Resident's possessions, notify the Cooperative that the Owner is releasing any excess of the Sales Proceeds over the sum of the following amounts:
>
> > a. Any unpaid Monthly Carrying Charges and other charges under this Agreement which have not been validly withheld or deducted pursuant to the provisions of any special or general laws; and
> >
> > b. A reasonable amount necessary to repair any damage caused to the Unit by the Resident or any person under the Resident's control or on the premises with the Resident's consent, reasonable wear and tear excluded.  In the case of such damage, the Owner shall provide the Resident within thirty (30) days with an itemized list of damages, signed by the Owner or its agent under pains and penalties of perjury, the repairs necessary to correct it, and written evidence, actual or estimated cost of such repairs.

Debtor's counsel, referring to the By-Laws of the Corporation, which like the Articles submitted by LiBassi were not certified, noted that Article 2 provided that "[t]he purpose of this corporation is to provide its shareholders with housing and Community facilities on a non-profit basis for low and moderate income households."  The By-Laws also provided that the Board of Directors must approve any person for membership; that

a member must execute an Occupancy Agreement; and that the Corporation "shall have

a lien on outstanding shares of the corporation in order to secure payment of any sums

which shall be due or become due for any reason whatsoever, including any sums due

under any occupancy agreements. . . ."  In addition, the By-Laws provided that "the

corporation shall have the obligation to purchase the membership, together with all of the

member's rights  with respect to the member's unit."

## V. DISCUSSION

A. <u>Applicable Law</u>

Federal Rule of Civil Procedure 15, made applicable to this proceeding by Fed. R.

Bankr. P. 7015 provides:

(a) **Amendments Before Trial**

(1) **Amending as a Matter of Course**. A party may amend its pleading once
as a matter of course within:

(A) 21 days after serving it; or

(B) if the pleading is one to which a responsive pleading is
required, 21 days after service of a responsive pleading, or 21
days after service of a motion under Rule 12(b), (e), or (f),
whichever is earlier.

(2) **Other Amendments**.  In all other cases, a party may amend its pleading
only with the opposing party's written consent  or the court's leave.  The
court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a).  According to the Court in <u>Brandt v. Midway Health Care Center (In

re Newcare Health Corp.)</u>, 274 B.R. 307 (Bankr. D. Mass. 2002),

In determining whether leave to amend should be granted, the court has
wide discretion to grant such leave. It is limited only by the Supreme Court's

> admonition that leave to amend should not be permitted where there is
> "undue delay, bad faith or dilatory motive on the part of the movant,
> repeated failure to cure deficiencies by amendment previously allowed,
> undue prejudice to the opposing party by virtue of allowance of the
> amendment, [or] futility of amendment, etc."

274 B.R. at 311 (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  The provisions of Rule

15(a) further the policy of trying cases on their merits. Foman v. Davis, 371 U.S. at 182.  In

Seitz v. 6130 West, LLC (In re Joey's Steakhouse, LLC), 474 B.R. 167, 177 (Bankr. E.D. Pa.

2012), the court observed:

> The precise delineation of when leave should be granted or denied is
> impossible; therefore, the determination is left to the sound discretion of the
> trial judge. Rolo v. City Investing Co. Liquidated Trust, 155 F.3d 644, 645 (3d
> Cir. 1998). This requires the Court to consider the positions of both parties
> and the effect that the request will have on them. 6 Charles Alan Wright, et
> al., *Federal Practice and Procedure* § 1487 (3d ed.). . . . As the moving party, the
> Trustee bears the burden of proof in explaining the reasons for delay in
> seeking leave to amend. *See* Payne v. City of Phila., 2005 WL 1863188, *2
> (E.D.Pa.Aug. 3, 2005).

474 B.R. at 177.

B. Analysis

The Court granted LiBassi an opportunity to amend his Complaint on January 22,

2013 after noting that his original Complaint failed to set forth the specific Bankruptcy

Code sections upon which he relied to seek an exception to discharge of his attorney's fees

and bar the Debtor's discharge.  His amended Complaint, which is the subject of the

Debtor's Motion to Dismiss, did not rectify the gross deficiencies associated with his

original Complaint.  Notably, with respect to Count I, LiBassi did not specifically reference

11 U.S.C. § 523(a)(4) in his Complaint, merely alleging that the Debtor engaged in

fraudulent acts as a fiduciary.

In Breed's Hill Ins. Agency v. Fravel (In re Fravel), 485 B.R. 1 (Bankr. D. Mass. 2013),

this Court stated:

> The United States Bankruptcy Appellate Panel for the First Circuit in Raso v. Fahey (In re Fahey), 482 B.R. 678 (1st Cir. BAP 2012), recently interpreted § 523(a)(4), observing that "[t]his bar to discharge reaches debts incurred through abuses of fiduciary positions . . . [and] involv [es] debts arising from the debtor's acquisition or use of property that is not the debtor's." Id. at 687 (citing FNFS, Ltd. v. Harwood (In re Harwood), 637 F.3d 615, 619 (5th Cir.2011) (citations and internal quotations omitted)). The Bankruptcy Appellate Panel added:
>
>> [A] creditor must establish three elements to invoke the § 523(a)(4) exception to dischargeability. "First, the debt must result from a fiduciary's defalcation under an 'express or technical trust' . . . Second, the debtor must have acted in a fiduciary capacity with respect to the trust. . . . Third, the transaction in question must be a 'defalcation' within the meaning of bankruptcy law." Chao v. Duncan (In re Duncan), 331 B.R. 70, 77 (Bankr.E.D.N.Y.2005) (citations omitted).
>
> Fahey, 482 B.R. at 687.
>
> The requirement of an express trust requires "an explicit declaration of trust, a clearly defined trust res, and an intent to create a trust relationship." Id. (citing Gehlhausen v. Olinger (In re Olinger), 160 B.R. 1004, 1014 (Bankr. S.D. Ind. 1993) (internal quotations and citations omitted); LaPointe v. Brown (In re Brown), 131 B.R. 900, 905 (Bankr. D. Me.1991)). In contrast, a technical trust "'arises under statute or common law.'" Fahey, 482 B.R. at 688 (quoting In re D'Abrosca, 2011 WL 4592338, at *5; Farley v. Romano (In re Romano), 353 B.R. 738 (Bankr. D. Mass. 2006); M–R Sullivan Mfg. Co. v. Sullivan (In re Sullivan), 217 B.R. 670, 674 (Bankr. D. Mass. 1998); Collenge v. Runge (In re Runge), 226 B.R. 298, 305 (Bankr. D. N.H. 1998)). . . .

Fravel, 485 B.R. at 14.

LiBassi failed to allege the existence of an express or technical trust; he failed to

allege the Debtor's fiduciary capacity with respect to the trust; he failed to identify a trust

res or allege an intent to create a trust relationship.  Although his allegations of fraudulent actions allude to a defalcation, without more, his allegations are woefully deficient and did not cure the defects associated with his original Complaint.  In view of LiBassi's bare bones allegations with respect to Count I, the Court finds that he has failed to satisfy the standards set forth in Iqbal and Twombly; his admission as to the absence of an express or technical trust renders any further amendment futile.

With respect to LiBassi's arguments with respect to Count II, the Court finds that further amendment of the Complaint is futile as well.  LiBassi did not reference a particular subsection of § 727 in his amended Complaint.  He appeared to argue that the Debtor concealed her interest in, or committed a false oath with respect to the valuation of, her single stock certificate in Stony Gardens Cooperative Corporation, suggesting that it had a value at the commencement of the case greater than what was listed by the Debtor on Schedule B.

In Lussier v. Sullivan (In re Sullivan), 44 B.R. 1 (Bankr. D. Mass. 2011), aff'd, 455 B.R. 829 (B.A.P. 1st Cir. 2011),  this Court set forth the requirements of a cause of action under § 727(a)(4)(A), stating:

> In Commonwealth of Massachusetts v. Sohmer (In re Sohmer), 434 B.R. 234 (Bankr. D. Mass. 2010), this Court, quoting Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir.1987), summarized the law applicable to complaints under 11 U.S.C. § 727(a)(4). It stated:
>
> > Under § 727(a)(4)(A), the debtor can be refused his discharge only if he (i) knowingly and fraudulently made a false oath, (ii) relating to a material fact. The burden of proof rests with the trustee, In re Shebel, 54 B.R. 199, 202 (Bankr. D. Vt. 1985), but "once it reasonably appears that the oath is false, the burden

falls upon the bankrupt to come forward with evidence that he has not committed the offense charged." <u>Matter of Mascolo</u>, 505 F.2d 274, 276 (1st Cir. 1974).

The statute, by its very nature, invokes competing considerations. On the one hand, bankruptcy is an essentially equitable remedy. As the Court has said, it is an "overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." <u>Bank of Marin v. England</u>, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966). In that vein, the statutory right to a discharge should ordinarily be construed liberally in favor of the debtor. <u>Matter of Vickers</u>, 577 F.2d 683, 687 (10th Cir.1978); <u>In re Leichter</u>, 197 F.2d 955, 959 (3d Cir.1952), *cert. denied*, 344 U.S. 914, 73 S.Ct. 336, 97 L.Ed. 705 (1953); <u>Roberts v. W.P. Ford & Son, Inc.</u>, 169 F.2d 151, 152 (4th Cir. 1948). "The reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural." <u>Dilworth v. Boothe</u>, 69 F.2d 621, 624 (5th Cir. 1934).

On the other hand, the very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. As we have stated, "[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." <u>Mascolo</u>, 505 F.2d at 278. Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight. *See* <u>In re Tabibian</u>, 289 F.2d 793, 797 (2d Cir.1961); In re Shebel, 54 B.R. at 202. The bankruptcy judge must be deft and evenhanded in calibrating these scales.

In re Sohmer, 434 B.R. at 249 (quoting <u>In re Tully</u>, 818 F.2d at 110).

<u>In re Sullivan</u>, 444 B.R. at 7-8.

LiBassi's amended Complaint fails to state a plausible claim for relief under §

727(a)(4) or any other subsection of § 727.  The Court rejects LiBassi's verbal request to

further amend his Complaint.  Having failed to state a plausible claim for relief in his

amended Complaint, a further amendment to assert that the Debtor concealed her interest

in the Cooperative or knowingly and fraudulently made a false oath as to its value would

be futile.  LiBassi had no evidence as to the value of the Debtor's unit, other than the

formula set forth in the Articles of Organization.  When his offer of proof with respect to

that evidence is weighed against the Debtor's disclosure of the stock certificate on Schedule

B and her rental agreement on Schedule G, the Trustee's decision to file a Report of No

Distribution, and the provisions in both the Articles and By-Laws restricting the transfer

of the stock to low and low-moderate income individuals approved by the Board of

Directors, LiBassi did not establish any likelihood that the Debtor lied in ascribing no value

to the unit or that a sale of  the stock certificate would generate income for the estate.  In

short, accepting LiBassi's evidence at face value, the Court would be unable to find that the

Debtor willfully and intentionally made a false oath or concealed the value of her share in

the Cooperative.

Although LiBassi complained of difficulties obtaining information from the Debtor

in a Motion to Compel Production of Documents, the Court reviewed the documents

provided to him by the Debtor pursuant to the Court's April 11, 2013 order.  LiBassi was

not deprived of meaningful information and was not precluded from filing an amended

Complaint with plausible claims for relief.  Moreover, he was not precluded from obtaining

information from the Stony Brook Gardens Cooperative Corporation about the frequency

of transfers and the value ascribed to stock certificates.  Having failed to obtain such information, the Court finds that the weight of the proffered evidence compels the conclusion that the Debtor did not intentionally undervalue, let alone conceal, her share in the Cooperative, particularly where she and other residents remain obligated to pay monthly rent and transfers of shares of stock are restricted.

## VI. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Debtor's Motion to Dismiss LiBassi's Amended Complaint**.**

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated:  May 1, 2013